## L. A. GOODWIN v. W. B. MARSH.

Eastern Section. July 3, 1926.

No petition for Certiorari was filed.

1. **Malicious prosecution. Evidence held sufficient to go to the jury.**

In an action for malicious prosecution occasioned by the prosecution of plaintiff for stealing lumber, where the evidence showed that the defendant was angry about the lumber and he knew that the plaintiff was asserting a claim of right to the lumber and there was no concealed action in the removal of the lumber, **held** there was evidence sufficient to go to the jury.

2. **Appeal and error. Statement of improper argument in motion for new trial is not proof of such argument.**

Where assignment of error was based upon the alleged impropriety of argument of counsel addressed to the jury and the bill of exceptions contained no evidence of the argument except statements made in the motion for new trial which were set out in the bill of exceptions, **held** that there was not sufficient record before the Appellate Court for it to pass upon the assignment of error.

3. **Appeal and error. Malicious prosecution. Argument of counsel justified.**

In an action for malicious prosecution where punitive damages were authorized, **held** that it was proper for the attorneys to argue and point out the financial ability of the defendant to pay damages and to show his position and standing in the community to show the judgment and wisdom that he might be expected to use.

4. **Trial. Malicious prosecution. It is unnecessary to plead or prove special damages where a felony is charged.**

In cases charging a man with the commission of a felony no special damages need be alleged or proved, but the jury, in case they find for the plaintiff, may assess exemplary damages, and if their prerogative is exercised reasonably, their verdict will not be disturbed.

Appeal from Chancery Court, Carter County; Hon. D. A. Vines, Chancellor.

Affirmed.

Dugger & Grindstaff, of Elizabethton, for plaintiff in error.

Allen & Allen, of Elizabethton, for defendant in error.

SNODGRASS, J.   This is an action for malicious prosecution.   The damages claimed were $25,000, and the judgment secured was $800. This judgment, on motion for a new trial, was reduced to $400, under protest.

The charge in the warrant under which Marsh was prosecuted was, that the defendant W. B. Marsh had stolen 16,000 feet of lumber belonging to the said Goodwin.   The plea to the declaration in this cause was not guilty.

Goodwin appealed and Marsh filed the record for writ of error, seeking to have his judgment for $400 restored to $800, which he thinks the proof would require.

L. H. Goodwin assigned errors as follows:

"1.   The learned trial court erred in overruling the plaintiff in error's motion for peremptory instructions at the close of the plaintiff's (in the court below) evidence.   The plaintiff in error moved the court to grant peremptory instructions at the close of the defendant in error's evidence.   This motion was overruled."

"2.   The learned trial court erred in overruling the plaintiff in error's motion for peremptory instructions at the close of all the evidence introduced in the case."

"3.   The learned trial court erred in permitting Judge Allen, the counsel for the defendant in error to make a prejudicial argument to the jury in his closing argument.   He referred to the defendant as a bank president, a cattle man, a very rich man, a very intellectual man, and that if they believed that a man of this character should have known better that it would be their duty to find in favor of the plaintiff.   The counsel for the defendant, Goodwin, objected to this argument and the court overruled the objection with comment.   Judge Allen continued his argument in the same vein for several minutes.   The plaintiff in error insists that this was gross error and unfair to the plaintiff in error for the court to permit the counsel for the defendant in error to prejudice and confuse the minds of the jury as to their duty in deciding the case upon an unfair and incorrect statement of the law, without comment and an explanation of the rule at the time when defendant objected. To passively sit by and permit this argument gave some sanction to its validity, and could not effectively be cured by the charge which followed at a different time and couched in general terms as to the criterion in determining whether the plaintiff in error had probable cause in commencing the action."

"4.   The evidence preponderated against the verdict of the jury and in favor of the plaintiff in error.   It overwhelmingly showed that plaintiff in error had probable cause in commencing

the criminal action and that it was commenced in good faith and was not malicious; that the prior proceeding had not terminated.''

"5. The damages were excessive.''

Defendant in error, Marsh, insists that the learned trial judge erred in requiring a remittitur of $400.

For convenience the parties will be hereinafter referred to as they were styled below.

It is proper to state that a motion was made by attorneys for W. B. Marsh to strike the assignments of error from the files, as not having been made in time. The record appears to have been filed March 16, 1926, and the assignments of error on April 22, 1926. We think, upon the representations made at the bar, that this motion should be overruled, which we do, and dispose of the case on its merits.

The facts upon which this controversy arose, as shown from the record, are as follows:

The plaintiff Marsh and one Thad Whitehead were manufacturing lumber. Whitehead said they were partners. Marsh said they were partners to a limited extent; that he, Marsh, had bought some lumber on the stump; that he sold Whitehead a half interest in it; that Whitehead was to do the sawing of all of it, and Marsh was to pay him $5. per thousand therefor; that they were not partners; that Whitehead was to manufacture the lumber, but had no authority to sell lumber; that Whitehead was to sell the cross-ties; that he did not give Whitehead authority to sell this particular lumber to Goodwin; that he, Marsh, sold it to Clark, and sent his wagon for it; that his occupation was a mail carrier; that he was also engaged in the lumber and real estate business; that on or about the 11th day of November, 1924, he was arrested on a warrant, sworn out by the defendant Goodwin, charging him with larceny; the warrant was issued by J. H. Burnham, a Justice of the Peace; that he gave bond for his appearance before the J. P., that shortly before he was arrested defendant Goodwin came to see him about the lumber, and that he told him Whitehead had no right to sell him the lumber; that he (Marsh) had sold the lumber to Clark before it was sawed; that Mr. Goodwin wanted him to take the lumber back that he had moved and agree not to remove any more, and that he told Mr. Goodwin he was going to deliver the balance of it to Mr. Clark; that Mr. Goodwin became very much offended at him, and soon after he left that he (Marsh) was arrested on a warrant charging him with stealing the lumber; that he appeared before the Justice of the Peace and the prosecutor dismissed the charge against him, and that he was discharged to go free; that he had suffered a loss of business; that he was a mail carrier and might have lost his

job; that a Mr. Grindstaff refused to sign a note for a thousand dollars for him immediately after he was prosecuted; that he had hired a lawyer to defend him, had consulted with him, and that he had appeared for him; that a replevin warrant, which had been transferred, had been dismissed.

A number of witnesses were called, who testified that the plaintiff was of good character. The officer testified as to having arrested the plaintiff.

The Justice of the Peace testified that he issued a warrant for the plaintiff in November charging him with larceny; that he did not know where the warrant was; that he had searched his files and was not able to find it. He filed a copy which was handed him on examination. He further testified that there was a dispute as to his jurisdiction to hear the case, that there were papers transferred to Justice Campbell, and he thinks it was the replevin warrant; that the case may have been abandoned, but that he does not know; that Mr. Goodwin paid the costs in his court several days afterward; that the prosecutor dismissed the case or withdrew the warrant; that he knew he never discharged Marsh, but Mr. Goodwin or his attorney dismissed the warrant and discharged the defendant. That L. H. Goodwin procured the warrant, and a few days afterward came in and paid the costs. That he also issued a replevin warrant for the lumber at the time he issued the State's warrant. On cross-examination he stated that Goodwin came in and asked him for some papers; that he asked him what kind of papers he wanted, and he replied that he did not know, that he wanted him to tell him. He said: ''I had him to relate the facts to me, and he said that he had bought some lumber from a man by the name of Whitehead; that he paid for it and the lumber was sawed and stacked near the mill, and on a spot designated by Goodwin; that the plaintiff, W. B. Marsh, came with his wagon and hauled it off.'' He said he didn't know where the lumber was. I told him if he knew where the lumber was he could replevy it. I then told him I thought Marsh was guilty of larceny, and that he could have a State's warrant issued for him; Goodwin replied that if that was true to let him have the State's warrant. So I wrote a State's warrant charging Marsh with larceny, and Goodwin swore to it. I did not advise Mr. Goodwin to take out a warrant charging Mr. Marsh with larceny, but I told him he was entitled to one if he wanted it.

The defendant, L. H. Goodwin, testified that he was 57 years old, and had been engaged in buying and selling lumber for several years. That he was not then a bank president, but was president of a Johnson county bank some few years ago. That he had bought the lumber from Whitehead, whom he afterwards learned was a partner with W. B. Marsh. That Whitehead called him over the

'phone proposing to him a sale of some lumber, stating that they needed some money to run the business. That he went down to Hampton to see him and bought some 16,000 feet of lumber. That he had been dealing with Whitehead for years and found him to be a gentleman, always complying with his contract. That he paid $200 to Whitehead at first, and afterwards paid him $25 more. That all he did was to go to Burnham and relate the facts, and he issued the warrant. That he did not authorize attorney Clark to dismiss the criminal action, and he did not know what happened with it. That it was his understanding it was to be tried before Esquire Campbell at Hampton. That he had never known or seen Mr. Marsh before. That he had seen the lumber piled on the spot where he had designated near the mill, and of course he believed Mr. Marsh had stolen his lumber. That it might have been the replevin warrant that was transferred. That it was true Mr. Marsh was turned loose at Esquire Burnham's office, and that he (Goodwin) had paid the cost of the larceny case to Mr. Burnham. That Mr. Clark, his attorney wrote him a letter about the matter. He was shown a letter, which he said was a copy. That he honestly believed Mr. Marsh had stolen his lumber and was guilty of larceny, and that he prosecuted him in good faith. That he had no malice toward Mr. Marsh. That he went to Hampton to see about the matter, and that when he went to the mill he found his lumber had been removed. That Mr. Whitehead informed him that the plaintiff (Marsh) had hauled it away with his teams, over his (Whitehead's) protest. That he asked Whitehead and others there at the mill what kind of a man Marsh was, for he had never seen or heard of him, and they told him he was a bad fellow; that he always beat everybody with whom he had dealings, and that he had stolen his lumber.

Witness Whitehead testified that he had been in the lumber business for several years, and that he and Marsh were partners in the lumber business for something over a year. That he sold Goodwin a quantity of lumber. That Marsh told him to sell the lumber to anybody that he could, in order to get money to run the business. That he had called up Goodwin and asked him to buy some lumber from them, and he said he would come down in a few days. That he told Marsh he thought they could sell some lumber to Goodwin, and that Marsh told him to go ahead and sell the lumber to Goodwin, to whom he sold it, and that Mr. Marsh knew he had done so. That Goodwin paid him $225 for the lumber he bought from them. That the lumber was moved and piled according to the direction of Mr. Goodwin. That sometime after they sold the lumber to Goodwin, Marsh brought his wagon and hauled it off. That he protested against his hauling the lumber away, and Marsh said he had sold it to Mr. Clark at a higher price than they had sold it to Mr. Good-

win. That he notified Goodwin that Marsh was hauling the lumber off. That he had a right to sell the lumber to Mr. Goodwin, for Marsh had told him to sell it to him. That he had sold lumber to other people, and Marsh had approved it. That Mr. Marsh was a bad man, dishonest, because he had broken him up by dealing crookedly with him. On cross-examination he stated that he had a right to sell the lumber as well as cross-ties. That Mr. Marsh sued him and obtained a judgment against him, which he had not paid. That he had nothing out of which he could make it, because he had broken him up.

Mr. Stephens testified that he heard Marsh tell Whitehead to sell the lumber to Goodwin.

Mr. Pearce testified that he had bought some lumber from Whitehead, and told Marsh about it, who said it was all right.

Mr. Davis testified that he used to work at Whitehead's sawmill, and was working there when Mr. Goodwin bought some lumber over a year ago. Whitehead had directed him to pile the lumber up as it was being sawed. That Goodwin was there and pointed out the spot away from the mill where he wanted his lumber stacked. That he stacked the lumber on the spot according to the direction of Mr. Goodwin.

Mr. Grindstaff testified that at the time he refused to sign the note with Mr. Marsh he did not know, nor had he heard that he was being prosecuted by Mr. Goodwin. That he just didn't want to sign the note.

Tip Reed testified that he was acquainted with the general character of Marsh; that it was bad, and that he was not entitled to any credit as a witness. That Marsh had told him a lie over some lumber he had traded him. That Marsh had found him in bed sick several weeks after they had entered into an oral contract, and left another contract for him to sign; that it was not in accordance with the previous agreement. He said: "No, I didn't sign it when I got well. I didn't sue him, because one can't law with a man that don't care what he swears, and offers to swear a lie. I didn't sue him because I thought the court might believe him and disbelieve me. I didn't sue him because one can't law with a man who don't care what he swears, and offers to swear a lie."

In rebuttal plaintiff testified that he did not tell Thad Whitehead to sell this lumber to Goodwin or anyone else.

The foregoing is substantially the evidence that was before the jury. We think both at the close of the plaintiff's testimony, and at the close of all the testimony, there was evidence sufficient to go to the jury. There can be no doubt that the prosecution had terminated. Both the plaintiff and another witness had testified that the prosecutor (Goodwin) was mad about the lumber. Goodwin had

seen the plaintiff before he had had him arrested and talked with him about the lumber. At that time all the lumber had not been removed, and the plaintiff (Marsh) told him that he was going to remove the balance. He knew that the plaintiff was asserting a claim of right to the lumber, and that there were no surreptitious circumstances connected with its removal. Men do not usually sound a trumpet or go in the open, broad daylight, in the presence of other men who protest their action to commit a theft. If there are any facts regarding this claim of the plaintiff to the lumber that were not communicated to Goodwin, they were open for his investigation, and the opinion of the J. P. to whom he applied for advice was not perhaps any more expert than his own, not available as a justification, but a circumstance merely tending to negative the idea of malice. The defendant himself was a man of age and experience, and had been a banker. These were circumstances from which the jury were authorized to find that there was a lack of probable cause to believe the plaintiff guilty of a larceny. For if the lumber was taken under a claim of right, it could not be larceny even though Goodwin may have had title to it.

Under the plaintiff's contention, which the jury were authorized to believe, Whitehead had no right to sell the lumber, as it belonged to the plaintiff. And, too, without regard to the fact that there was proof that the prosecutor was offended and mad the jury were authorized from a lack of probable cause to presume malice. There was therefore no error committed by the court in overruling the motion for peremptory instructions at either stage of the trial, and the first and second assignments are overruled.

The third assignment of error is based upon the alleged impropriety of the argument of counsel addressed to the jury. The bill of exceptions contains no evidence of what the argument was. Of course the motion for a new trial is shown by the bill of exceptions, and in one of the grounds of that motion the alleged argument or impropriety is set out; but that is not proof that such an argument was made or such impropriety committed, and it is the office of the bill of exceptions to supply the proof in some way, to support the allegations of the motion. The motion is not self-authenticating.

"The question whether or not due exception was taken to the language and behavior of the district attorney is one of fact. A charge or allegation of such matter in a motion for a new trial is not evidence of the matter, any more than is a like charge of separation of the jury or intoxication of the jury evidence of such separation or intoxication. It is not sufficient to make such charges, but the charges must be authenticated and established in a proper way. There is no authentication whatever upon the record of the statements that exception was taken at the time to any portion of the argument of

the district attorney. The mere fact that the written grounds of a motion for a new trial are included in the bill of exceptions constitutes no verification of the statements made in such a motion. Such inclusion in a bill of exceptions only establishes that the statements or allegations were made on the motion, not that they are true." Sherman v. State, 125 Tenn., 41.

But we think, if the objection were considered from the facts of this case, the argument was legitimate. Punitive damages were authorized in case the jury should conclude that there was a liability, and the financial ability of the defendant to respond was a legitimate consideration, while the judgment and wisdom that might be imputed to a man of his standing and experience were proper subjects to be presented as reflecting upon what was the real animus of his action in the matter. The third assignment is overruled.

The fourth assignment, that the evidence preponderates against the verdict, is not available in this court, where the rule is, that if there is any evidence upon which the verdict can be supported, it will not be disturbed on questions of fact.

The fifth assignment is, that the verdict is excessive. As it was reduced we do not think it is, but at this sum we think the jury was within their reasonable warrant.

In cases charging a man with the commission of a felony no special damages need be alleged or proved, but the jury, in case they find for the plaintiff, may assess exemplary damages, and if their prerogative is exercised reasonably their verdict will not be disturbed. The jury found and reported a verdict of $800, with which the Circuit Judge was not satisfied as to the amount, and reduced it to $400. Upon the whole we are satisfied with his action, under all the circumstances of the case, and the fifth and last assignment, together with the assignment of the plaintiff (Marsh) that the Circuit Judge erred in requiring a remittitur, is overruled.

The judgment of the circuit court is affirmed, with costs against appellant.

Portrum and Thompson, JJ., concur.